IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN JONES | ) | CASE NO. |
| 4290 East 113th Street | ) | |
| Cleveland, Ohio 44105 | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND REINSTATEMENT** |
| CITY OF CLEVELAND | ) | |
| 601 Lakeside Avenue, Room 106 | ) | **JURY DEMAND ENDORSED** |
| Beachwood, Ohio 44122 | ) | **HEREIN** |
| | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Kevin Jones, by and through undersigned counsel, as his Complaint against the

Defendant, states and avers the following:

## PARTIES AND VENUE

1. Jones is a resident of the city of Cleveland, county of Cuyahoga, state of Ohio.

2. The City of Cleveland is a Municipal Corporation within the State of Ohio.

3. The City was at all times hereinafter mentioned an employer within the meaning of R.C.

   § 4112.02.

4. The City was at all times hereinafter mentioned an employer within the meaning of The Civil

   Rights Act of 1964, 42 U.S.C. 2000e-2.

5. The City was at all times hereinafter mentioned an employer within the meaning of The

   Americans with Disabilities Act ("ADA") 42 U.S.C. 126 § 12101 *et seq*.

## JURISDICTION & VENUE

6. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Jones is alleging Federal Law claims under the Civil Rights Act of 1964, 42 U.S.C. 2000e-2 and The Americans with Disabilities Act ("ADA") 42 U.S.C. 126 § 12101 *et seq*.

7. All material events alleged in this Complaint occurred in county of Cuyahoga.

8. This Court has supplemental jurisdiction over Jones's state law claims pursuant to 28 U.S.C. § 1367 as Jones' state law claims are so closely related to his federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

10. Within 300 days of the conduct alleged below, Jones filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2018-02629, regarding harassment, discrimination, retaliation, and unfair treatment due to his gender, failure to conform to the City's perception of the male stereotype, and his disability (hereinafter, First EEOC Charge).

11. Within 300 days of the conduct alleged below, Jones filed a second Charge of Discrimination with the EEOC in Charge No. 532-2019-01064, alleging gender and disability discrimination, retaliation, discrimination on the basis that the City perceived Jones not to conform to the male gender stereotype, and that the City refused to return Jones to active duty (hereinafter referred to as Second EEOC Charge).

12. On or about March 19, 2019, the EEOC issued and mailed a Notice of Right to Sue letter to Jones regarding the First EEOC Charge.

13. Jones received his Right to Sue letter from the EEOC for his First EEOC Charge in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

14. Jones has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter for his First EEOC Charge.

15. Jones has properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.407(b) for his First EEOC Charge.

16. Jones intends to actively participate in the EEOC's investigation of his Second EEOC Charge.

17. Jones intends to amend his Complaint in this matter, or alternatively, to file a separate action upon receipt of a Right to Sue Letter for the Second EEOC Charge.

18. Upon receipt of a Right to Sue Letter for the Second EEOC Charge, Jones will have properly exhausted his administrative remedies pursuant to 29 C.F.R. § 1614.07(b).

## **FACTS**

19. Jones is a current employee of the City.

20. The City employs Jones in the Division of Police.

21. The City employs Jones as a police officer.

22. The City employed Jones on or about April 13, 2015.

23. Jones is male.

24. Jones identifies as homosexual.

25. Prior to June 1, 2018, Jones did not disclose to the City that he identifies as homosexual.

26. On or about January 5, 2017, when Jones was driving to work, he saw smoke billowing out from a residence (hereinafter referred to as, "House Fire").

3

27. During the House Fire, Jones immediately pulled over to the house to ensure the safety of the residents.

28. During the House Fire, there were many individuals inside of the house.

29. During the House Fire, the individuals inside of the house attempted to impair Jones' ability to remove all of the inhabitants safely.

30. During the House Fire, Jones sustained multiple injuries.

31. During the House Fire, Jones sustained an injury due to smoke inhalation.

32. During the House Fire, Jones sustained injuries to his shoulder.

33. During the House Fire, Jones sustained injuries to his foot.

34. Jones continues to suffer from the injuries and symptoms of the House Fire injuries.

35. The injuries and symptoms resulting from the House Fire injuries substantially impair one or of Jones' major life activities, including working.

36. Jones' injuries and symptoms resulting from the House Fire injuries constituted a physical impairment.

37. As a result of suffering from the injuries and symptoms resulting from the House Fire injuries, Jones is and was considered disabled within the meaning of R.C. § 4112.01(A)(13).

38. As a result of suffering from the injuries and symptoms resulting from the House Fire injuries, Jones is and was considered disabled within the meaning of the ADA 42 U.S.C. 126 § 12101 *et seq.*

39. In the alternative, the City perceived Jones as being disabled.

40. In the alternative, the City perceived that Jones' medical condition constituted a physical impairment.

4

41. In the alternative, the City perceived Jones' disability to substantially impair one or more of his major life activities, including working.

42. Despite this actual or perceived disabling condition, Jones was still able to perform the essential functions of his job with or without reasonable accommodation.

43. After Jones sustained the House Fire injuries, the City placed Jones on restricted duty.

44. The City placed Jones on restricted duty because of his disability.

45. After Jones sustained the House Fire injuries, Matt Ratti continually harassed Jones on the basis of Jones' disability.

46. During all material events herein, Ratti is, and/or was, a police officer for the City.

47. Ratti is male.

48. Upon information and belief, Ratti identifies as heterosexual.

49. Ratti was aware that the City placed Jones on restricted duty.

50. After the City placed Jones on restricted duty, Ratti referred to Jones as "stub toe."

51. Ratti continually harassed Jones for being on restricted duty.

52. Ratti harassed Jones due to this disability in writing, in a group chat shared between City police officers.

53. Ratti harassed Jones due to his disability in front of management-level employees.

54. The City was aware that Ratti harassed Jones on the basis of his disability.

55. Upon information and belief, the City did not investigate Ratti's harassment of Jones on the basis of his disability following the House Fire.

56. Upon information and belief, the City did not discipline Ratti for harassing Jones on the basis of his disability following the House Fire.

57. The City ratified Ratti's harassment of Jones on the basis of his disability.

58. On June 1, 2018, Jones participated in the LGBTQ Pride Parade (hereinafter referred to as, "Pride Parade").

59. Commander Deirde Jones organized members of the City to walk in the Pride Parade so that there would be a police presence engaging in the parade.

60. During the Pride Parade, Jones took a picture of himself and posted it on his Facebook page with a positive message regarding the parade.

61. Jones' next scheduled day at work following the Pride Parade was June 4, 2018.

62. When Jones returned to work on June 4, 2018, Jones saw that an individual printed out and pinned the picture Jones took at the Pride Parade to a cork board for all City employees and management to see (hereinafter referred to as "Disclosure Incident").

63. During the Disclosure Incident, the individual who posted the picture on the cork board wrote below the picture, "On restricted for over a year, can't answer radio, but can walk around downtown for a parade…??"

64. The Disclosure Incident harassed Jones on the basis of his disability.

65. Alternatively, the Disclosure Incident harassed Jones on the basis of a perceived disability.

66. The individual who posted the picture during the Disclosure Incident intended to disclose to the City that Jones identifies as homosexual.

67. The Disclosure Incident harassed Jones on the basis of his gender.

68. The Disclosure Incident harassed Jones because Jones did not conform to the City or the individual's perception of the male stereotype and how a male should act.

69. Upon information and belief, the picture was left up on the cork board during the Disclosure Incident for multiple days.

70. The City's management-level employees saw the picture on the cork board during the Disclosure Incident prior to Jones seeing it.

71. The City's management-level employees saw the picture on the cork board during the Disclosure Incident and failed to take it down.

72. The City's management-level employees saw the picture on the cork board during the Disclosure Incident and failed to conduct an investigation into it.

73. The City ratified the harassment of the Disclosure Incident.

74. Immediately following the Disclosure Incident, Jones began finding illicit and harassing drawings at the district where he worked.

75. On June 6, 2018, Jones discovered a drawing of a penis with "Jones" written inside of, or next to the penis.

76. On June 12, 2018, Jones discovered a second drawing of a penis with "Jones" written inside of, or next to the penis.

77. In June 2018, Jones discovered in the men's bathroom a third drawing of a penis with "Jones" written inside of the penis.

78. In addition to the three penis drawings described herein, Jones discovered many other drawings of penises with his name written in them, or near them.

79. An individual drew the penises described herein to harass Jones on the basis of his disability.

80. Alternatively, an individual drew the penises described herein to harass Jones on the basis of a perceived disability.

81. An individual drew the penises described herein to harass Jones on the basis of his gender.

82. An individual drew the penises described herein to harass Jones because Jones failed to conform to the individual's perception of the male stereotype and how a male should act.

83. The City's managers and/or employers saw the drawings of the penises.

84. The City failed to investigate the penis drawings.

85. The City failed to discipline and/or terminate an employee for the penis drawings.

86. The City ratified the harassment of Jones through failing to conduct an investigation regarding the penis drawings.

87. The City failed to conduct an investigation regarding the penis drawings until after Jones made written complaint regarding the same.

88. The City failed to conduct an investigation regarding the penis drawings until after Fox 8 News Cleveland ran a segment regarding Jones' complaints following a public record request.

89. Following the Pride Parade, Ratti would continually make the following comment to Jones: "how's those knees feeling?"

90. Ratti made the "how's those knees feeling?" comments in front the City's managers and/or employers.

91. Ratti made the "how's those knees feeling?" comments to harass Jones on the basis of his gender.

92. Ratti made the "how's those knees feeling?" comments to harass Jones for failing to conform to Ratti's perception of the male stereotype and how a male should act.

93. The City failed to investigate Ratti's "how's those knees feeling?" comments to Jones.

94. The City failed to discipline Ratti for making the "how's those knees feeling?" comments to Jones.

95. The City condoned Ratti stating to Jones, "how's those knees feeling?"

96. The City condoned Ratti's harassment of Jones on the basis of Jones' gender.

97. The City condoned Ratti's harassment of Jones for failing to conform to Ratti's perception of the male stereotype and how a male should act.

98. On August 18, 2018, Jones submitted a written complaint to Lieutenant George Peters.

99. During all material events herein, Peters has or had authority to discipline and or terminate Jones' employment.

100. During all material events herein, Peters is and/or was an employer for the City.

101. Jones' August 18, 2018 written complaint detailed the harassment and discrimination herein.

102. Jones provided a copy of his August 18, 2018 complaint to the City's Human Resource Department.

103. On August 24, 2018, Fox 8 News Cleveland ran a segment regarding Jones' August 18, 2018 complaint and the complaints he made therein.

104. Immediately following Fox 8 News Cleveland's segment on Jones, Jones received a group chat message in a group chat with all of the police officers in Jones' class stating, "why am I not surprised?"

105. Other City police officers harassed Jones regarding the Fox 8 News Cleveland segment regarding Jones' complaint of harassment and discrimination.

106. As a result of being harassed and retaliated against for the Fox 8 News Cleveland segment, Jones submitted another written complaint on or about August 24, 2018.

107. In Jones' August 24, 2018 written complaint, Jones advised the City, "I truly don't feel safe anymore."

108. In Jones' August 24, 2018 written complaint, Jones advised the City, "All this negative drama I believe has created possibly some psychological harm.

109. In Jones' August 24, 2018 written complaint, Jones advised the City, "I just want all the harassment to stop, make officers responsible for their actions in the workplace."

110. The harassment of Jones continued following Jones second written complaint to the City.

111. The City failed to stop the harassment of Jones on the basis of his disability.

112. The City failed to stop the harassment of Jones on the basis of his perceived disability.

113. The City failed to stop the harassment of Jones on the basis of his gender.

114. The City failed to stop the harassment of Jones because Jones did not conform to its perception of the male stereotype and how a male should act.

115. The City failed to stop the harassment of Jones in retaliation for his protected complaints.

116. As the City failed to take any action regarding the harassment, discrimination, and retaliation herein, Jones filed the First Charge of Discrimination on August 29, 2018.

117. As a result of the House Fire injuries, and another injury in 2018, Jones has been issued a handicap placard to be used for parking.

118. On January 10, 2019, Jones parked in a designated handicap spot while assigned to the Cleveland Police Record Section.

119. The City advised Jones that he was not permitted to park in a handicap spot at work without clearance from the Cleveland Police Medical Unit.

120. The City does not require similarly-situated, non-disabled employees to provide clearance from the Cleveland Police Medical Unit in order to park in a handicap spot.

121. Alternatively, the City does not require similarly-situated, employees it does not perceive to be disabled to provide clearance from the Cleveland Police Medical Unit in order to park in a handicap spot.

122. The City does not require similarly-situated employees who conform to the City's perception of the male stereotype and how a male should act to provide clearance from the Cleveland Police Medical Unit in order to park in a handicap spot.

123. The City does not require similarly-situated employees who have not made protected complaints to provide clearance from the Cleveland Police Medical Unit in order to park in a handicap spot.

124. The City advised Jones that he was not permitted to park in a handicap spot at work without a statement from the Cleveland Police Medical Unit providing the basis for his disability.

125. The City does not require similarly-situated, non-disabled employees to provide a statement from the Cleveland Police Medical Unit providing the basis for his disability in order to park in a handicap spot.

126. Alternatively, the City does not require similarly-situated, employees it does not perceive to be disabled to provide a statement from the Cleveland Police Medical Unit providing the basis for his disability in order to park in a handicap spot.

127. The City does not require similarly-situated employees who conform to the City's perception of the male stereotype and how a male should act to provide a statement from the Cleveland Police Medical Unit providing the basis for his disability in order to park in a handicap spot.

128. The City does not require similarly-situated employees who have not made protected complaints to provide a statement from the Cleveland Police Medical Unit providing the basis for his disability in order to park in a handicap spot.

129. The City's management-level employees have told Jones that they do not believe that Jones has a disability.

130. Commander Jones stated to Jones that, "I don't believe that you have a disability."

131. The City's management-level employees do not tell male employees who conform to the City's perceived stereotype of the male gender and how a male should act that have a disability that they do not believe that the individual is disabled.

132. The City's management-level employees do not tell employees who have not made protected complaints and that have a disability that they do not believe that the individual is disabled.

133. Following the City stating that Jones could not park in a handicap spot, Jones sent an email to the City on January 11, 2019 detailing a complaint regarding this unfair treatment.

134. In part, Jones' January 11, 2019 complaint stated, "I believe I am being unfairly targeted due to my complaints and for filing a charge of discrimination with the EEOC against the City."

135. During all material events herein, Chief Calvin Williams had and/or has the authority to fire and/or discipline Jones' employment.

136. During all material events herein, Williams is and/or was an employer of the City.

137. On or about January 14, 2019, Williams took Jones off active duty.

138. On or about January 14, 2019, Williams took Jones off active duty alleging that Jones was not physically fit to perform his job duties because he had been issued a handicap placard.

139. When the City took Jones off active duty, it did not advise him of his rights under the FMLA.

140. When the City took Jones off active duty, it did not advise Jones that he would be able to apply for and utilize FMLA leave.

141. Failing to advise Jones of his rights under the FMLA after taking him off active duty for the alleged reason of being physically unable to perform the job functions is a *per se* violation of the FMLA.

142. The City has not taken similarly-situated male employees who conform to the City's stereotype of the male gender off active duty who have been issued a handicap placard.

143. The City has not taken similarly-situated employees who have not made protected complaints off active duty who have been issued a handicap placard.

144. As of January 11, 2019, Jones has been physically capable of performing his essential job functions, with or without a reasonable accommodation.

145. Jones filed his Second EEOC Charge on February 27, 2019, regarding the City removing him from active duty.

146. As of the date of this filing, the City has not returned Jones to active duty.

147. When the City removed Jones from active duty, the City has not been compensating him.

148. Jones has incurred economic damages as of January 14, 2019 and continues to incur said damages as a result of being taken off active duty.

**COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT 42 U.S.C. 126 § 12101 *et seq*.**

149. Jones restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

150. Jones suffers from injuries sustained during the House Fire.

151. As a result of suffering from the House Fire injuries, Jones is disabled.

152. In the alternative, the City perceived Jones as being disabled.

153. Jones' condition constituted a physical impairment.

154. Jones' condition substantially impaired one or more of his major life activities including working.

155. In the alternative, the City perceived Jones' condition to substantially impair one or more of his major life activities including working.

156. Despite Jones' disability, Jones is fully capable of performing his essential job functions with or without reasonable accommodation.

157. The City treated Jones differently than other similarly-situated employees based on his disabling condition.

158. Alternatively, the City treated Jones differently than other similarly-situated employees based on his perceived disabling condition.

159. The City continually ratified harassment of Jones on the basis of his disability.

160. The City removed Jones from active duty even though he is fully capable of performing his job functions, due to his disability.

161. Alternatively, the City removed Jones from active duty even though he is fully capable of performing his job functions, due to a perceived disability.

162. The City violated 42 U.S.C. 126 § 12101 *et seq*. when it removed Jones from active duty based on his disability.

163. Alternatively, the City violated 42 U.S.C. 126 § 12101 *et seq*. when it removed Jones from active duty based on a perceived disability.

164. The City violated 42 U.S.C. 126 § 12101 *et seq*. by discriminating against Jones based on his disabling condition.

165. The City violated 42 U.S.C. 126 § 12101 *et seq*. by discriminating against Jones based on his perceived disabling condition.

166. Jones suffered emotional distress as a result of the City's conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. 126 § 12101 *et seq*.

167. As a direct and proximate result of the City's conduct, Jones suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## **COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

168. Jones restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

169. Jones suffers from injuries sustained during the House Fire.

170. As a result of suffering from the House Fire injuries, Jones is disabled.

171. In the alternative, the City perceived Jones as being disabled.

172. Jones' condition constituted a physical impairment.

173. Jones' condition substantially impaired one or more of his major life activities including working.

174. In the alternative, the City perceived Jones' condition to substantially impair one or more of his major life activities including working.

175. Despite Jones' disability, Jones is fully capable of performing his essential job functions with or without reasonable accommodation.

176. The City treated Jones differently than other similarly-situated employees based on his disabling condition.

177. Alternatively, the City treated Jones differently than other similarly-situated employees based on his perceived disabling condition.

178. The City continually ratified harassment of Jones on the basis of his disability.

179. The City removed Jones from active duty even though he is fully capable of performing his job functions, due to his disability.

180. Alternatively, the City removed Jones from active duty even though he is fully capable of performing his job functions, due to a perceived disability.

181. The City violated R.C. § 4112.01 *et seq*. when it removed Jones from active duty based on his disability.

182. Alternatively, the City violated R.C. § 4112.01 *et seq*. when it removed Jones from active duty based on a perceived disability.

183. The City violated R.C. § 4112.01 *et seq*. by discriminating against Jones based on his disabling condition.

184. The City violated R.C. § 4112.01 *et seq*. by discriminating against Jones based on his perceived disabling condition.

185. Jones suffered emotional distress as a result of the City's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

186. As a direct and proximate result of the City's conduct, Jones suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT III: GENDER DISCRIMINATION IN VIOLATION OF § 42 U.S.C. 2000e-2 *et seq*.

187. Jones restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

188. Jones is a member of a statutorily protected class based on his gender under 42 U.S.C. 2000e-2 *et seq*.

189. The City treated Jones differently than other similarly-situated employees based on his gender.

190. The City treated Jones differently than other similarly-situated employees because he failed to conform to the City's perception of the male stereotype and how a male should act.

191. The City discriminated against Jones on the basis of his gender throughout his employment with the City.

16

192. The City discriminated against Jones throughout his employment with the City because he failed to conform to the City's perception of the male stereotype and how a male should act.

193. The City removed Jones from active duty, wherein he incurred damages.

194. The City removed Jones form active duty based on his gender.

195. The City removed Jones from active duty because he failed to conform to the City's perception of the male stereotype and how a male should act.

196. The City's discrimination against Jones based on his gender violates 42 U.S.C. § 2000e-2 *et seq.*

197. The City's discrimination against Jones because he failed to conform to its perception of the male stereotype and how a male should act violates 42 U.S.C. § 2000e-2 *et seq*.

198. Jones suffered emotional distress as a result of the City's conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. § 2000e-2 *et seq*.

199. As a direct and proximate result of the City's conduct, Jones suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**COUNT IV: GENDER DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.***

200. Jones restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

201. Jones is a member of a statutorily protected class based on his gender under R.C. § 4112.01 *et seq*.

202. The City treated Jones differently than other similarly-situated employees based on his gender.

203. The City treated Jones differently than other similarly-situated employees because he failed to conform to the City's perception of the male stereotype and how a male should act.

204. The City discriminated against Jones on the basis of his gender throughout his employment with the City.

205. The City discriminated against Jones throughout his employment with the City because he failed to conform to the City's perception of the male stereotype and how a male should act.

206. The City removed Jones from active duty, wherein he incurred damages.

207. The City removed Jones form active duty based on his gender.

208. The City removed Jones from active duty because he failed to conform to the City's perception of the male stereotype and how a male should act.

209. The City's discrimination against Jones based on his gender violates R.C. § 4112.01 *et seq.*

210. The City's discrimination against Jones because he failed to conform to its perception of the male stereotype and how a male should act violates R.C. § 4112.01 *et seq*.

211. Jones suffered emotional distress as a result of the City's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

212. As a direct and proximate result of the City's conduct, Jones suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT V: HOSTILE WORK ENVIRONMENT IN VIOLATION OF 42 U.S.C. § 2000e-2 *et seq.*

213. Jones restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

214. During his employment with the City, Jones was subjected to offensive and harassing conduct by his co-workers based on his disability.

215. During his employment with the City, Jones was subjected to offensive and harassing conduct by management-level employees based on his disability.

18

216. Alternatively, during his employment with the City, Jones was subjected to offensive and harassing conduct by his co-workers based on his perceived disability.

217. Alternatively, during his employment with the City, Jones was subjected to offensive and harassing conduct by management-level employees based on his perceived disability.

218. During his employment with the City, Jones was subjected to offensive and harassing conduct by his co-workers based on his gender.

219. During his employment with the City, Jones was subjected to offensive and harassing conduct by management-level employees based on his gender.

220. During his employment with the City, Jones was subjected to offensive and harassing conduct by his co-workers based on his failure to conform to their perception of the male stereotype and how a male should act.

221. During his employment with the City, Jones was subjected to offensive and harassing conduct by management-level employees based on his failure to conform to their perception of the male stereotype and how a male should act.

222. The City knew or should have known of the harassing conduct against Jones by his co-workers.

223. The City engaged in the harassing conduct through its management-level employees.

224. Defendants condoned, tolerated and ratified this harassing conduct.

225. This harassing conduct was severe and/or pervasive.

226. This harassing conduct was offensive to Jones.

227. This harassing conduct interfered with Jones' ability to perform his job duties.

228. The City's offensive and harassing conduct created a hostile and/or abusive work environment for Jones.

229. The City's offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly-situated to Jones.

230. Jones suffered emotional distress as a result of the City's conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. § 2000e-2 *et seq.*

231. As a direct and proximate result of the City's conduct, Jones has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## **COUNT VI: HOSTILE WORK ENVIRONMENT IN VIOLATION OF R.C. § 4112.01 *et seq.***

232. Jones restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

233. During his employment with the City, Jones was subjected to offensive and harassing conduct by his co-workers based on his disability.

234. During his employment with the City, Jones was subjected to offensive and harassing conduct by management-level employees based on his disability.

235. Alternatively, during his employment with the City, Jones was subjected to offensive and harassing conduct by his co-workers based on his perceived disability.

236. Alternatively, during his employment with the City, Jones was subjected to offensive and harassing conduct by management-level employees based on his perceived disability.

237. During his employment with the City, Jones was subjected to offensive and harassing conduct by his co-workers based on his gender.

238. During his employment with the City, Jones was subjected to offensive and harassing conduct by management-level employees based on his gender.

239. During his employment with the City, Jones was subjected to offensive and harassing conduct by his co-workers based on his failure to conform to their perception of the male stereotype and how a male should act.

240. During his employment with the City, Jones was subjected to offensive and harassing conduct by management-level employees based on his failure to conform to their perception of the male stereotype and how a male should act.

241. The City knew or should have known of the harassing conduct against Jones by his co-workers.

242. The City engaged in the harassing conduct through its management-level employees.

243. Defendants condoned, tolerated and ratified this harassing conduct.

244. This harassing conduct was severe and/or pervasive.

245. This harassing conduct was offensive to Jones.

246. This harassing conduct interfered with Jones' ability to perform his job duties.

247. The City's offensive and harassing conduct created a hostile and/or abusive work environment for Jones.

248. The City's offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly-situated to Jones.

249. Jones suffered emotional distress as a result of the City's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

250. As a direct and proximate result of the City's conduct, Jones has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT VII:  RETALIATION IN VIOLATION OF 42 U.S.C. § 2000e-2 *et seq.*

251. Jones restates each and every prior paragraph of this complaint, as if it were fully restated herein.

252. As a result of the City's discriminatory conduct described above, Jones complained about the discrimination and harassment he received.

253. Subsequent to Jones' reporting of disability discrimination and/or harassment, the City failed to discipline employees and/or managers.

254. Subsequent to Jones' reporting of disability discrimination and/or harassment, the City failed to take any measures to stop the harassment and/or retaliation.

255. Subsequent to Jones' reporting of disability discrimination and/or harassment, the City ratified such discrimination and/or harassment.

256. Subsequent to Jones' reporting of gender discrimination and/or harassment, the City failed to discipline employees and/or managers.

257. Subsequent to Jones' reporting of gender discrimination and/or harassment, the City failed to take any measures to stop the harassment and/or retaliation.

258. Subsequent to Jones' reporting of gender discrimination and/or harassment, the City ratified such discrimination and/or harassment.

259. Subsequent to Jones' reporting of discrimination and/or harassment for Jones' failure to conform to the City's perception of the male stereotype and how a male should act, the City failed to discipline employees and/or managers.

260. Subsequent to Jones' reporting of discrimination and/or harassment for Jones' failure to conform to the City's perception of the male stereotype and how a male should act, the City failed to take any measures to stop the harassment and/or retaliation.

261. Subsequent to Jones' reporting of discrimination and/or harassment for Jones' failure to conform to the City's perception of the male stereotype and how a male should act, the City ratified such discrimination and/or harassment.

262. Jones filed the First EEOC Charge as a result of the discrimination and/or harassment asserted herein.

263. Subsequent to Jones' reporting of discrimination and/or harassment, the City took Jones off active duty.

264. Subsequent to Jones filing the First EEOC Charge, the City took Jones off active duty.

265. The City took Jones off active duty where it would not take off a similarly-situated individual off active duty who had not made protected complaints.

266. The City's actions were retaliatory in nature based on Jones' opposition to the unlawful discriminatory conduct.

267. It is an unlawful discriminatory practice to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice.

268. Jones suffered emotional distress as a result of The City's conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. § 2000e-2 *et seq*.

269. As a direct and proximate result of the City's retaliatory discrimination against Jones, and its retaliatory removal of him from active duty, he suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

## COUNT VIII:  RETALIATION IN VIOLATION OF R.C. § 4112.01 *et seq*.

270. Jones restates each and every prior paragraph of this complaint, as if it were fully restated herein.

271. As a result of the City's discriminatory conduct described above, Jones complained about the discrimination and harassment he received.

272. Subsequent to Jones' reporting of disability discrimination and/or harassment, the City failed to discipline employees and/or managers.

273. Subsequent to Jones' reporting of disability discrimination and/or harassment, the City failed to take any measures to stop the harassment and/or retaliation.

274. Subsequent to Jones' reporting of disability discrimination and/or harassment, the City ratified such discrimination and/or harassment.

275. Subsequent to Jones' reporting of gender discrimination and/or harassment, the City failed to discipline employees and/or managers.

276. Subsequent to Jones' reporting of gender discrimination and/or harassment, the City failed to take any measures to stop the harassment and/or retaliation.

277. Subsequent to Jones' reporting of gender discrimination and/or harassment, the City ratified such discrimination and/or harassment.

278. Subsequent to Jones' reporting of discrimination and/or harassment for Jones' failure to conform to the City's perception of the male stereotype and how a male should act, the City failed to discipline employees and/or managers.

279. Subsequent to Jones' reporting of discrimination and/or harassment for Jones' failure to conform to the City's perception of the male stereotype and how a male should act, the City failed to take any measures to stop the harassment and/or retaliation.

280. Subsequent to Jones' reporting of discrimination and/or harassment for Jones' failure to conform to the City's perception of the male stereotype and how a male should act, the City ratified such discrimination and/or harassment.

281. Jones filed the First EEOC Charge as a result of the discrimination and/or harassment asserted herein.

282. Subsequent to Jones' reporting of discrimination and/or harassment, the City took Jones off active duty.

283. Subsequent to Jones filing the First EEOC Charge, the City took Jones off active duty.

284. The City took Jones off active duty where it would not take off a similarly-situated individual off active duty who had not made protected complaints.

285. The City's actions were retaliatory in nature based on Jones' opposition to the unlawful discriminatory conduct.

286. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

287. Jones suffered emotional distress as a result of The City's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

288. As a direct and proximate result of the City's retaliatory discrimination against Jones, and its retaliatory removal of him from active duty, he suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

**COUNT IX: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS**

289. Jones restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

290. Pursuant to 29 U.S.C. § 2601 *et seq*., covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.

291. The City is a covered employer under the FMLA.

292. During his employment, Jones qualified for FMLA leave.

293. During his employment, the City removed Jones from active duty.

294. When the City removed Jones from active duty, it did so asserting that it was due to him being physically unable to perform his job functions.

295. Defendants failed to properly advise Jones of his rights under the FMLA.

296. If the City viewed Jones as being physically unable to perform his job functions, it should have advised him of his rights to apply for and utilize FMLA leave.

297. Defendant unlawfully interfered with Jones' exercise of his rights under the FMLA in violation of Section 105 of the FMLA and section 825.220 of the FMLA regulations.

298. As a direct and proximate result of Defendant's conduct, Jones is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorneys' fees.

**<u>DEMAND FOR RELIEF</u>**

WHEREFORE, Jones demands from Defendants the following:

(a) Issue an order requiring the City to return Jones to one of the positions to which he was entitled by virtue of his application and qualifications, and expunge his personnel file of all negative documentation;

(b) An award against the City of compensatory and monetary damages to compensate Jones for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $ 25,000 per claim to be proven at trial;

(c) An award of punitive damages against the City in an amount in excess of $ 25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Jones' claims as allowable under law;

(e)  An award of the taxable costs of this action; and

(f)  An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/*Daniel S. Dubow*

Brian D. Spitz (0068816)
Daniel S. Dubow (0095530)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:    (216) 291-5744
Email:  brian.spitz@spitzlawfirm.com
        daniel.dubow@spitzlawfirm.com

*Attorneys for Plaintiff Kevin Jones*

## JURY DEMAND

Plaintiff Kevin Jones demands a trial by jury by the maximum number of jurors permitted.

/s/*Daniel S. Dubow*

Brian D. Spitz (0068816)
Daniel S. Dubow (0095530)
**THE SPITZ LAW FIRM, LLC**