**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **KEVIN JONES,** | **CASE NO. 1:19-CV-01275** |
| **Plaintiff,** | |
| -vs- | **JUDGE PAMELA A. BARKER** |
| **CITY OF CLEVELAND,** | |
| **Defendant.** | **MEMORANDUM OF OPINION AND ORDER** |

This matter comes before the Court upon the Motion to Enforce Settlement Agreement ("Motion to Enforce Settlement") of Defendant City of Cleveland (the "City"). (Doc. No. 22.) Plaintiff Kevin Jones ("Jones") filed a brief in opposition to the City's Motion to Enforce Settlement on April 9, 2020, to which the City replied on April 16, 2020. (Doc. Nos. 23, 24.) On April 21, 2020, Jones also filed a Motion to Strike the City's Reply Brief, and Alternative Motion to File Sur-Reply Instanter ("Motion to Strike"), to which the City responded on April 23, 2020. (Doc. Nos. 25, 27.)

Also, currently pending is Jones's Motion for Leave to File Third Amended Complaint ("Motion to Amend"). (Doc. No. 26.) The City filed a brief in opposition to Jones's Motion to Amend on April 27, 2020, to which Jones replied on May 4, 2020. (Doc. Nos. 28, 29.)

For the following reasons, the City's Motion to Enforce Settlement (Doc. No. 22) is GRANTED, Jones's Motion to Strike (Doc. No. 25) is GRANTED IN PART and DENIED IN PART, and Jones's Motion to Amend (Doc. No. 26) is DENIED.

**I. Background**

On June 4, 2019, Jones filed a Complaint against the City in this Court, setting forth claims under federal and Ohio law for disability discrimination, gender discrimination, hostile work

environment, retaliation, and unlawful interference with Family and Medical Leave Act rights. (Doc. No. 1.) Jones subsequently amended his Complaint in order to add claims related to conduct raised in a second charge of discrimination filed against the City with the Equal Employment Opportunity Commission ("EEOC") for which he had not yet received a right-to-sue letter at the time he filed his Complaint. (Doc. No. 15.) Several months later, Jones then filed a Second Amended Complaint in order to add allegations related to a third EEOC charge, although he still had not received a right-to-sue letter with respect to this third charge at that time. (Doc. No. 20.)

On April 10, 2019, shortly before Jones filed his original Complaint, Jones's counsel sent a demand letter to the City. (Doc. No. 23-2.) Therein, Jones indicated his willingness to settle for either (1) $96,000 if Jones left his employment with the City; or (2) $25,000 if he remained employed with the City. (*Id.* at 1.) The letter also detailed other terms that would be part of the proposed settlement, including "[a] mutual release of all claims that may exist as of the date of the agreement between the parties except any Workers' Compensation claims that exist or may exist." (*Id.* at 2.) No reference was made to any grievances against the City pursuant to the parties' collective bargaining agreement, either to explicitly include or exclude grievances from Jones's release of claims. The demand letter further provided: "As we continue to negotiate over the amount of the settlement, the above listed settlement terms are expressly to be incorporated in all subsequent demands, and will form the key terms should a settlement be reached, unless there is an explicit agreement to alter or remove these terms before the settlement is reached." (*Id.*)

The City did not agree to Jones's proposed terms, and it appears that no further settlement discussions occurred until February 2020. Specifically, on February 3, 2020, the City's counsel emailed Jones's counsel, in relevant part, the following:

2

> The City submits the following offer of settlement: Defendant offers $1500. In any ultimate settlement there will be a full release of all claims known or unknown from the beginning of time to the date of the execution of the settlement agreement. There will be no admission of liability, and *the release will cover all possible causes of action as enumerated in the Second Amended Complaint and any other type of cause including but not limited to withdrawal of all grievances* involving Plaintiff and also covering his most recent EEOC charge.

(Doc. No. 23-3 at 7 (emphasis added).) After confirming that the City's offer was not contingent on Jones resigning, Jones's counsel provided a counteroffer by emailing, in relevant part, the following: "I can provide a revised demand of $22,500 (with Jones to remain employed)." (*Id.* at 5.)

Thereafter, the parties continued to negotiate through counsel in a series of email exchanges that continued on the same email thread as the City's original February 3, 2020 email. In each of the City's emails containing an offer of settlement, the City incorporated by reference the terms expressed in its February 3, 2020 email. To wit, on February 11, 2020, in response to Jones's demand of $22,500, the City's counsel wrote, in relevant part: "Thank you for your communication. In response the City will increase its offer to the sum of $4000 (four thousand dollars) *including all of the other terms mentioned in the original offer*. Jones will remain employed." (*Id.* (emphasis added).) On February 13, 2020, Jones's counsel responded: "I hope this email reaches you well. I can provide a revised demand of $20,000. Please let me know how your client responds." (*Id.* at 2.) The next day, the City's counsel replied, in relevant part: "Thank you for your communication. In response the City increases its offer to $6500 (six thousand five hundred dollars) *including all of the other terms mentioned in the original offer* and Mr. Jones will remain employed." (*Id.* (emphasis added).)

On February 18, 2020, Jones's counsel responded to this offer by emailing, in relevant part, the following:

> Thank you for providing this response. At this time, we can communicate a revised demand of $15,000. This will be a best and final at this time. This number is less than

3

> half of our client's lost wages (not to mention, he will not receive the full amount due to attorneys' fees/costs) and should still fit within nuisance or near nuisance value for the City. Again, this is conditioned on Jones remaining employed and *releasing all claims* until the date of signing the agreement. (We also received the RTS on his most recent EEOC charge, so we would not need to withdraw that charge, but obviously he would agree not to pursue those claims).

(*Id.* at 1 (emphasis added).)

In response, on February 19, 2020, the City's counsel wrote:

> Thank you for your response dated February 18, 2020. The City accepts the Plaintiff's revised demand of $15,000 *subject to the terms expressed in my e-mail dated February 3, 2020 which are incorporated herein by reference*. The settlement will be through the date of the execution of the agreement by the parties. Jones will remain employed. Each party will be responsible for and shall bear his or its own attorneys' fees, costs, and expenses. We will prepare a draft of the agreement to furnish to you for your review.

(*Id.* (emphasis added).)

Jones's counsel did not respond to this email. The next communication between the parties occurred on March 5, 2020 when the City's counsel emailed a draft settlement agreement to Jones's counsel for review. (Doc. No. 23-4 at 4; Doc. No. 22-5.) On March 18, 2020, Jones's counsel emailed back a redlined version of the proposed settlement agreement. (Doc. No. 23-4 at 3; Doc. No. 23-5.) Jones's counsel proposed the deletion of a provision providing for the withdrawal with prejudice of two pending grievances filed by and/or on behalf of Jones against the City pursuant to a collective bargaining agreement between the City and the Cleveland Police Patrolmen's Association. (Doc. No. 23-5 at 2-3.)[1] The City's counsel responded by rejecting this edit, stating that it was the City's

---

[1] In addition to the edit regarding the withdrawal of grievances, Jones's counsel also (1) identified the specific portion of the settlement to be paid to Jones and Jones's counsel, respectively; (2) decreased the time allowed for payment from forty-five days to thirty days; and (3) added a clause clarifying that Jones's release of claims would not include claims for workers' compensation benefits, claims that cannot be released pursuant to law, and claims arising after the settlement agreement. (Doc. No. 23-5 at 2, 4.) The City's counsel did not object to any of these changes, except for insisting on maintaining forty-five days for payment. (Doc. No. 23-4 at 3.)

4

position that the parties had agreed to the withdrawal of all grievances and noting the language in its original February 3, 2020 email that "in any ultimate settlement, there will be a full release of all claims known or unknown from the beginning of time to the date of the execution of the settlement agreement…**including but not limited to withdrawal of all grievances involving the Plaintiff**…" (Doc. No. 23-4 at 2-3.) Jones's counsel replied that his revised demands had rejected the City's previous offers, and ultimately wrote: "We did not agree to withdraw the grievances. If that means no deal then we do not have a deal." (*Id.* at 1-2.)

Subsequently, on March 27, 2020, the City filed its Motion to Enforce Settlement, seeking to enforce the settlement the City claims was reached between the parties. (Doc. No. 22.) On April 9, 2020, Jones filed a Brief in Opposition to Defendant's Motion to Enforce Settlement Agreement ("Opposition"). (Doc. No. 23.) On April 16, 2020, the City then filed a Reply Brief to Plaintiff's Brief in Opposition to Defendant's Motion to Enforce Settlement ("Reply"). (Doc. No. 24.)

Shortly thereafter, on April 21, 2020, Jones filed his Motion to Strike, arguing that the Court should strike the City's Reply because it raised arguments for the first time that should have been raised in the City's Motion to Enforce Settlement. (Doc. No. 25.) Alternatively, Jones requested leave to file a sur-reply instanter to respond to such arguments. (*Id.*) On April 23, 2020, the City opposed Jones's Motion to Strike, asserting its Reply properly responded to the issue raised in Jones's Opposition. (Doc. No. 27.)

Finally, on April 21, 2020, Jones filed his Motion to Amend, seeking leave to file a Third Amended Complaint to add claims related to his third EEOC charge for which he had received a right-to-sue letter. (Doc. No. 26.) The City filed a brief in opposition to Jones's Motion to Amend

5

on April 27, 2020, to which Jones replied on May 4, 2020. (Doc. Nos. 28, 29.) As such, all pending motions are ripe for consideration.

**II.  Analysis**

    **a.  Motion to Strike**

In his Motion to Strike, Jones asserts the Court should strike the City's Reply because it contains arguments raised for the first time that should have been raised in the City's Motion to Enforce Settlement. (Doc. No. 25 at 1-2.) Alternatively, Jones requests leave to file a sur-reply instanter to respond to such arguments. (*Id.* at 2-3.) In response, the City contends that its Reply properly responded to the issues raised in Jones's Opposition. (Doc. No. 27.) The Court finds striking the City's Reply unwarranted, but will grant Jones's request to file his sur-reply instanter.

Generally, "[n]ew evidence and new arguments are not appropriate in a reply brief." *Abraitis v. United States*, No. 1:11–cv–2077, 2012 WL 2885586, at *1 (N.D. Ohio July 13, 2012); *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) ("[R]eply briefs *reply* to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration.") (quoting *Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002)). Accordingly, courts have refused to consider new arguments raised in a reply brief. *E.g., Abraitis*, 2012 WL 2885586, at *2.

In this case, Jones argues that the City improperly raised two new arguments in its Reply. First, Jones asserts that the City argued for the first time in its Reply that "claims" and "grievances" are the same. (Doc. No. 25 at 1-2.) The City contends, however, that its position has consistently been that a release of all claims includes a release of grievances, and that in its Reply, the City was responding to Jones's assertion that grievances and claims are distinct from one another. (Doc. No.

6

27 at 1-3.) The Court finds that the City was entitled to respond to Jones's arguments in this regard, and denies Jones's request to strike this portion of the City's Reply.

Second, Jones argues that the City raised arguments regarding upholding releases of claims in the absence of fraud or duress, which were not addressed in the City's original Motion to Enforce Settlement. (Doc. No. 25 at 2.) The City asserts this was appropriate to include in its Reply because Jones attacked the validity of the parties' settlement agreement. (Doc. No. 27 at 3.) Because Jones has never claimed that the parties' alleged settlement was the product of fraud or duress, the portion of the City's Reply related to this issue is irrelevant to the parties' dispute. As such, the Court will disregard the City's arguments on this issue, but finds no need to strike them from the City's Reply.

The Court will also grant Jones's alternative request for leave to file a sur-reply instanter and will consider his arguments responding to the City's Reply.

### b. Motion to Enforce Settlement

In its Motion to Enforce Settlement, the City claims that the parties reached an agreement as to the material terms of the settlement, including the requirement that Jones withdraw his pending grievances, and, therefore, the Court should enforce the parties' agreement. (Doc. No. 22 at 5-7.) In opposition, Jones asserts that the City's purported acceptance of Jones's February 18, 2020 offer was actually a counteroffer because it was "subject to" the terms in the City's original February 3, 2020 email, which incorporated additional terms regarding the withdrawal of grievances that were not included in Jones's settlement offer. (Doc. No. 23 at 6.) The Court concludes that Jones's February 18, 2020 offer to release all claims included a release of grievances, and, as a result, the parties entered into an enforceable settlement agreement.

7

"Before enforcing a settlement, a district court must conclude that agreement has been reached on all material terms." *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 645-46 (6th Cir. 2001). In assessing whether an agreement has been reached, federal courts have recognized that "[s]ettlement agreements are a type of contract subject to principles of state contract law." *Reed v. Wehrmann*, 159 F. Supp. 2d 700, 704 (S.D. Ohio 2001); *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992) ("Thus, '[w]hether [a settlement agreement] is a valid contract between the parties is determined by reference to state substantive law governing contracts generally.'") (quoting *White Farm Equip. Co. v. Kupcho*, 792 F.2d 526, 529 (5th Cir. 1986)). In this case, both parties cite to Ohio law as governing their dispute over whether they entered into an enforceable settlement agreement. (*See* Doc. No. 22 at 6; Doc. No. 23 at 5-6.)

In Ohio, a settlement agreement, like any other contract, requires "a meeting of the minds as well as an offer and an acceptance thereof." *Rulli v. Fan Co.*, 79 Ohio St.3d 374, 376 (1997); *see also Spoerke v. Abruzzo*, No. 2013–L–093, 2014 WL 1350143, at *5 (Ohio Ct. App. 11th Dist. Mar. 31, 2014) ("To constitute a valid contract, there must be an offer on the one side and an acceptance on the other resulting in a meeting of the minds of the parties."). "[S]ettlement agreements are highly favored in the law." *Cont'l W. Condo. Unit Owners Ass'n v. Howard E. Ferguson, Inc.*, 74 Ohio St.3d 501, 502 (1996). However, "courts should be particularly reluctant to enforce ambiguous or incomplete contracts that aim to memorialize a settlement agreement between adversarial litigants." *Rulli*, 79 Ohio St.3d at 376.

Here, neither party disputes that Jones's February 18, 2020 email was an offer. Instead, the parties dispute whether the City's email purporting to accept Jones's revised demand was an

8

acceptance sufficient to establish a meeting of the minds and an enforceable contract, or, instead, a rejection and counteroffer. (Doc. No. 23 at 6; Doc. No. 24 at 7.)

Under Ohio law, "[a] contract is formed only where no material variance exists between the terms of the offer and those of the acceptance." *Reed*, 159 F. Supp. 2d at 705. In other words, "[a]n acceptance of an offer forms a binding contract only if it corresponds to the offer in every respect." *Watral v. Tree Pres. Co., Inc.*, No. 76853, 2000 WL 502878, at *3 (Ohio Ct. App. 8th Dist. Apr. 27, 2000). "If the offeror must assent to additional terms . . . the reply is not acceptance but a rejection and a counteroffer." *Id.*; *Foster v. Ohio State Univ.*, 534 N.E.2d 1220, 1222 (Ohio Ct. App. 10th Dist. 1987) ("A reply to an offer which purports to accept but is conditional on the offeror's assent to terms additional to or different from those offered is not an acceptance but is a counteroffer.").

However, the "insertion in [an] acceptance of a condition which merely expresses that which would be implied in fact or in law by the offer does not preclude the consummation of the contract, since such a condition involves no qualification of the acceptor's assent to the terms of the offer." *Metal Craft Docks Acquisition, Inc. v. Richlak*, Nos. 2001–G–2351, 2001–G–2368, 2003 WL 138478, at *3 (Ohio Ct. App. 11th Dist. Jan. 17, 2003) (citations and internal quotations omitted). For example, in *Karas v. Brogan*, the Supreme Court of Ohio held that the addition of the words "oil lease has to be cancelled" on an offer to sell did not preclude a valid acceptance of the offer. 55 Ohio St.2d 128, 129 (1978). Because the offer specifically promised a title "free and clear of all liens and encumbrances" and the oil lease referenced was an encumbrance, the court found that "its removal or release would be required under the express language of such offer, and so the additional language cannot be the basis of a conclusion that the acceptance contained a fatal material variance." *Id.*

With regard to the meeting of the minds requirement, "[a]s in most jurisdictions, Ohio law does not require contracting parties to share a subjective meeting of the minds to establish a valid contract; otherwise, no matter how clearly the parties wrote their contract, one party could escape its requirements simply by contending that it did not understand them at the time." *216 Jamaica Avenue, LLC v. S & R Playhouse Realty Co.*, 540 F.3d 433, 440 (6th Cir. 2008). Instead, Ohio law requires "that the terms of the agreement establish an objective meeting of the minds, which is to say that the contract was clear and unambiguous." *Id.*; *Bruzzese v. Chesapeake Expl., LLC*, 998 F. Supp. 2d 663, 673 (S.D. Ohio 2014) ("[A]n objective standard applies to the determination of whether there was a meeting of the minds."). In determining whether contract terms are ambiguous, "[c]ommon words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Shifrin v. Forest City Enterprises, Inc.*, 64 Ohio St.3d 635, 638 (1992) (quoting *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978) (paragraph two of the syllabus)).

In the instant matter, Jones's February 18, 2020 email communicated a revised demand of $15,000 "conditioned on Jones remaining employed and releasing all claims until the date of signing the agreement." (Doc. No. 23-3 at 1.) The City purported to accept Jones's offer of settlement "subject to the terms expressed" in the City's February 3, 2020 email. (*Id.*) The City's February 3, 2020 email expressly stated that Jones's release of claims would include the "withdrawal of all grievances involving Plaintiff." (*Id.* at 7.) Jones argues that because his February 18, 2020 settlement demand did not state that he would agree to withdraw his union grievances, the City's incorporation of such a release in its purported acceptance means that the City actually rejected Jones's offer and provided a counteroffer. (Doc. No. 23 at 6.) Conversely, the City argues that the plain meaning of

10

the "release all claims" language in Jones's offer includes a release of grievances. (Doc. No. 24 at 5.) Thus, the City argues that the incorporation of its February 3, 2020 email into its acceptance to Jones's offer did not materially alter the terms of the offer, which the City accepted. (*Id.* at 7.)

Accordingly, the dispositive issue in this case is whether a release of all claims unambiguously includes a release of grievances. The Court concludes that it does. *Black's Law Dictionary* defines a "claim" to include "[t]he assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional" and "[a] demand for money, property, or a legal remedy to which one asserts a right; esp., the part of a complaint in a civil action specifying what relief the plaintiff asks for." *Claim, Black's Law Dictionary* (11th ed. 2019). The term "grievance," as relevant here, is defined as "[a] complaint that is filed by an employee or the employee's union representative and that usu. concerns working conditions, esp. an alleged violation of a collective-bargaining agreement." *Grievance, Black's Law Dictionary* (11th ed. 2019).[2] The broad definition of a claim as the assertion of an existing right or a demand for a legal remedy to which one asserts a right clearly includes a grievance, which is an employee's assertion of his or her rights under a collective bargaining agreement. As a result, Jones's February 18, 2020 offer to release all claims in exchange for continuing employment and $15,000 necessarily included an offer to release not only the claims pending in this action, but his grievances against the City as well.[3]

---

[2] In support of his argument that claims are distinct from grievances, Jones cites to an earlier edition of *Black's Law Dictionary*. (Doc. No. 25 at 2.) However, the definitions provided by the earlier edition are essentially the same. *See Claim, Black's Law Dictionary* (2d ed. 1910) ("A legal assertion; a legal demand."); *Grievance, Black's Law Dictionary* (2d ed. 1910) ("Pay, expectations, work conditions, other employment aspects, or an alleged violation of a collective bargaining agreement are all examples of subjects for a grievance.").

[3] While the language used is unambiguous, this conclusion is further supported by the fact that the City's February 3, 2020 email explicitly defined the release of claims to include the release of grievances, and the City incorporated that definition by reference into every one of its offers to Jones. (Doc. No. 23-3 at 2, 5, 7.) Jones never objected to the scope of that release, and used similarly unconditionally broad language in his offer when he stated the offer was contingent on him "releasing all claims until the date of signing the agreement." (*Id.* at 1.) Moreover, Jones's grievances appear to be

11

Jones argues that the City clearly recognized that Jones's February 18, 2020 settlement demand did not include a waiver of grievance issues because the City felt the need to add that term to its purported acceptance. (Doc. No. 23 at 6.) As noted above, however, the insertion of additional language into an acceptance which merely expresses that which would be implied in fact or in law by the offer does not preclude the consummation of the contract. *See Karas*, 55 Ohio St.2d at 129. Here, Jones's offer to release all claims against the City necessarily implied that if the offer was accepted, he would also withdraw his grievances. As a result, the City's insertion into its acceptance the condition that Jones withdraw his grievances did not create a material variance that would preclude acceptance. Even without such an addition, Jones would have been obligated to release his grievances as part of his obligation to release all claims against the City. Accordingly, the City's February 19, 2020 email constituted a valid acceptance, and the parties' agreement should be enforced.

The Court also finds an evidentiary hearing unnecessary. "Ordinarily, an evidentiary hearing is required where facts material to an agreement are disputed." *RE/MAX*, 271 F.3d at 646. "However, no evidentiary hearing is required where an agreement is clear and unambiguous and no issue of fact is present." *Id.*; *see also Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976) (affirming summary enforcement of settlement agreement when "no fact issue was present," the terms of the agreement were clear and unambiguous, and enforcement "was determinable solely as a matter of law"); *Reed*, 159 F. Supp. 2d at 703 ("[T]his case involves a purely legal question, i.e., did Plaintiff's response constitute a valid acceptance, resolution of which would not be aided by a plenary

---

at least somewhat interconnected with this action, as Jones as indicated that one of his grievances relates to "discipline he received for conduct raised in his Second Amended Complaint." (Doc. No. 23 at 2.)

12

hearing."). Here, there is no issue of fact, as the parties agree that they conducted all settlement negotiations via email and that no oral communications took place. (Doc. No. 22 at 5; Doc. No. 23 at 2.) Thus, there is no dispute over the content of the parties' communications, and the Court has the undisputed record of those communications before it for review. Moreover, as the Court held above, the agreement is unambiguous as to Jones's promise to release all claims. As such, an evidentiary hearing would not aid the Court in its decision, and Jones's request for a hearing is denied.

### c. Motion to Amend

Finally, in Jones's Motion to Amend, Jones seeks leave to file a Third Amended Complaint to add claims related to his third charge of discrimination with the EEOC for which he recently received a right-to-sue letter. (Doc. No. 26.) The City opposes Jones's Motion to Amend, arguing it would be futile because of the parties' settlement. (Doc. No. 28.) The Court agrees.

A party may amend its pleading once as a matter of course within twenty-one days after serving it or within twenty-one days after service of a responsive pleading or motion. Fed. R. Civ. P. 15(a)(1). Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Pursuant to Rule 15(a)(2), a court "should freely give leave [to amend] when justice so requires." *Id.*; *see also Morse v. McWhorter*, 290 F.3d 795, 799-800 (6th Cir. 2002) ("Generally, leave to amend is 'freely given when justice so requires.'") (quoting *Keweenaw Bay Indian Cmty. v. State of Michigan*, 11 F.3d 1341, 1348 (6th Cir. 1993)). However, "[a] motion for leave to amend the complaint may be denied when the motion is the product of undue delay, bad faith, or dilatory motive, amendment would cause undue prejudice to the opposing party, the plaintiff repeatedly failed to cure deficiencies in the complaint with previous amendments, or

13

amendment of the complaint would be futile." *Springs v. U.S. Dep't of Treasury*, 567 F. App'x 438, 443 (6th Cir. 2014).

In this case, Jones seeks leave to amend in order to add claims related to an EEOC charge that he is required to release under the parties' settlement agreement, which the Court has found to be valid and enforceable. Accordingly, Jones's amendment would be futile, and the Court denies Jones's Motion to Amend.

## III. Conclusion

For the reasons set forth above, the City's Motion to Enforce Settlement (Doc. No. 22) is GRANTED. The parties are ordered to perform in accordance with the settlement agreement, as memorialized in the attachment to the March 5, 2020 email from the City's counsel to Jones's counsel (Doc. No. 22-5) and as modified by the edits to Sections 3.B, 3.C, and 7 in the attachment to the March 18, 2020 email from Jones's counsel to the City's counsel (Doc. No. 23-5).

Jones's Motion to Strike (Doc. No. 25) is GRANTED IN PART and DENIED IN PART. Jones's Motion to Strike is granted to the extent it requests leave to file Jones's sur-reply instanter, but is denied to the extent it requests that the Court strike the City's Reply in support of its Motion to Enforce Settlement.

Jones's Motion to Amend (Doc. No. 26) is DENIED.

Consistent with this opinion and the parties' settlement agreement, this case is DISMISSED WITH PREJUDICE, with all parties to bear their own attorneys' fees, court costs, and other litigation expenses. The Court shall retain jurisdiction to enforce the settlement.

**IT IS SO ORDERED.**

Date: June 17, 2020

       *s/Pamela A. Barker*
PAMELA A. BARKER
U. S. DISTRICT JUDGE